UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RODNEY PAUL ROMULD,
individually, and consecutively
as Co-Special Administrator of
the Estate of Lucas Paul Gilbertson,
deceased,

        Plaintiffs,

v.

AEISSO SCHRAGE,

        Defendant.

CIVIL ACTION NO.

February 9, 2024

## COMPLAINT

### PRELIMINARY STATEMENT

1. This is an action, exclusively based upon federal constitutional substantive law, to redress the deprivation by the Defendant of rights secured to plaintiff RODNEY PAUL ROMULD, individually, and to the estate of the decedent, LUCAS PAUL GILBERTSON by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

2. These claims arise as a result of the Defendant's participation in the execution of an arrest warrant in Rhinehart Township, Minnesota, on January 9, 2024.

1

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, and 1343(a)(3).

4. Venue is proper in this Court by virtue of 28 U.S.C. §1391, because the events giving rise to the claims occurred within the District of Minnesota, and at least one of the Defendants resides in the District of Minnesota.

## PARTIES

5. Plaintiff RODNEY PAUL ROMULD is a resident of Polk County, Minnesota, and brings the instant lawsuit independently, in his individual capacity, exclusively upon federal constitutional substantive law grounds.[1] In addition, Plaintiff RODNEY PAUL ROMULD also

---

[1] Plaintiff Rodney Paul Romuld, as the father of his adult son decedent Lucas Paul Gilbertson, possesses an insular, free-standing federal civil rights action claim under 42 U.S.C § 1983, independent of any state law requirements for the appointment of trustees or the establishment of an estate relative to the decedent – requirements which would be otherwise applicable to wrongful death and survival actions commenced and maintained under Minnesota state law. Specifically, in this case, Plaintiff Rodney Paul Romuld has standing to commence the instant 42 U.S.C. § 1983 federal civil rights action independently of any estate or trusteeship established under Minnesota state law, and neither M.S.A. § 573.02 nor Rule 144.01 of the Minnesota General Rules of Practice, may be employed to limit, preclude, infringe upon or otherwise damage or diminish Plaintiff Rodney Paul Romuld's right to pursue his own independent 42 U.S.C. § 1983 federal civil rights action. See, e.g., *White v. Talboys*, 573 F. Supp. 49, 51 (D. Col. 1985)[A claim under 42 U.S.C. § 1983 cannot be limited by a survival statute or wrongful death statute "since it would limit and 'preclude recover by survivors suing in their own interests' . . .

2

brings this action in his capacity as Co-Special Administrator of the Estate of his son, LUCAS PAUL GILBERTSON, having been so-appointed along with his former spouse, Gail Gilbertson, the mother of the decedent, by the Minnesota District Court, Polk County, on January 30, 2024.[2] See, the "Order for Formal Appointment of Co-Special Administrators", attached to this Complaint as "Exhibit A".

6. At all times relevant to the claims asserted herein, the Plaintiff decedent, LUCAS PAUL ROMULD, was a resident of Polk County, Minnesota.

7. At all times relevant to the claims asserted herein, the "PINE TO PRAIRIE DRUG TASK FORCE", based in Crookston, Minnesota, was a unit audited by the Minesota Department of Public Safety, and was a specialized investigative and tactical unit participated in by the City of Crookston Police Department, the City of East Grand Forks Police

---

and would undermine the deterrence goals of § 1983.'"]; and *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1106 (9th Cir. 2014)[Parents "have a liberty interest in the companionship of their adult children and have a (42 U.S.C. § 1983) cause of action under the Fourth Amendment when the police kill an adult child without legal justification".(*additional citations omitted*)].

[2] A Special Administrator possesses standing to serve as a plaintiff to prosecute a federal civil rights action on behalf of the estate of the decedent. See, e.g., *Guenther v. Griffin Construction Company*, 846 F.3d 979 (8th Cir.2017); and *Estate of Stoick ex. rel. Spry v.McCorvey*, 2011 WL 3419939, *1 (D. Minn. July 29, 2011).

3

Department, the Polk County Sheriff's Office and the Pennington County Sheriff's Office.

8. At all times relevant to the claims asserted herein, the Defendant, OFFICER AEISSO SCHRAGE, was an officer in the "Pine to Prairie Drug Task Force", and at all times relevant to the claims asserted herein, SCHRAGE was acting under color of law, in the performance of his duties, and within the scope of his authority. SCHRAGE is sued in his individual and official capacities.

9. At all times relevant to the claims asserted herein, the Defendant, AEISSO SCHRAGE, was an officer in the City of Crookston Police Department, detailed on January 9, 2024, and at other previous times, to the "Pine to Prairie Drug Task Force" as a member of that multiple-agency unit, and SCHRAGE was acting under color of law, in the performance of his duties and within the scope of his authority. SCHRAGE is hereby named as a defendant herein, alternatively and consecutively, in his individual and official capacities.

## FACTS

10. On Tuesday, January 9, 2024, at approximately noon on that date,

Lucas Paul Gilbertson ("GILBERTSON") was a visitor at the home of his mother, Gail Gilbertson, at 19115 445th Avenue Southwest, East Grand Forks, Minnesota, 56721.

11.  Beginning in the Spring of 2023, on multiple occasions during the several-month period which immediately preceded January 9, 2024, decedent Lucas Paul Gilbertson had informed his father, Plaintiff Rodney Paul Romuld ("ROMULD"), that he was frightened of Defendant Aeisso Schrage ("SCHRAGE"), whom the decedent had known since the two had attended high school together years previously in East Grand Forks, Minnesota.  On these occasions, decedent Lucas Paul Gilbertson informed his father that, "(t)his guy (meaning Defendant Schrage) wants me dead", and that "if this guy (Schrage) gets me alone, he's going to kill me".

12.  Shortly after noon, on Tuesday, January 9, 2024, while decedent Lucas Paul Gilbertson was visiting the home of his mother, Gail Gilbertson, where a friend of Ms. Gilbertson's was also present at the time, officers from the "Pine to Prairie Drug Task Force" surreptitiously

surrounded the house for the ostensible purpose of preparing to serve an arrest warrant upon Lucas Paul Gilbertson for alleged bond violations in connection with a pending criminal case venued in Minnesota District Court in Polk County. The Task Force apparently had been informed that decedent Lucas Paul Gilbertson was present within the Gail Gilbertson residence at this time.

13. One of the approximately ten (10) officers then on the scene at the Gail Gilbertson residence knocked at the front door of the home, which was answered by Gail Gilbertson, with the officer asking Ms. Gilbertson if Lucas Paul Gilbertson was inside.

14. Shortly thereafter, Lucas Paul Gilbertson came out of the North side of the house briefly, before quickly re-entering it.

15. After Lucas Gilbertson was back inside the house, an officer at the scene is heard on officers' body cam audio[3] to shout the words "glass breaking!" The decedent's mother Gail Gilbertson witnessed her son

---

[3] https://www.valleynewslive.com/2024/01/24/body-camera-video-released-deadly-officer-involved-shooting-polk-county/

https://inewz.tv/video/bodycam-video-from-egf-police-in-deadly-officer-involved-shooting-by-east-grand-forks-january-12th/

break the glass of a window, and throw a handgun outside of the house into the snow. The gun was later found by Task Force officers, lying unfired, in the snow outside of the house.

16. The Minnesota Bureau of Criminal Apprehension (BCA) later stated in a press release dated January 12, 2024, as follows: "The task force members surrounded the home to stop Gilbertson from escaping and at one point (an) undercover East Grand Forks police officer (associated with the Task Force) entered the home and encountered Gilbertson. During that encounter, the officer deployed his Taser and fired his handgun at Gilbertson multiple times, striking him." The "undercover East Grand Forks police officer" referred to in this BCA press release was defendant Aeisso Schrage.

17. At this very time, plaintiff Rodney Paul Romuld was on a live phone call with his former spouse, Gail Gilbertson, who had called Romuld as the events of that morning had begun to unfold.

18. While the Task Force Officers were observed by Gail Gilbertson to be surrounding the home while the plaintiff was on the call with Ms.

Gilbertson, Romuld suddenly heard multiple gun shots ring out in the background, as his son Lucas Paul Gilbertson was being shot many times by defendant Aeisso Schrage.

19. On officers' body cam videos, gun shots were heard, and the decedent's mother Gail Gilbertson then rushed out of the house screaming.

20. At this point, several of the Task Force officers present rushed into the home through the back door.

21. Inside the house, while decedent Lucas Paul Gilbertson was unarmed, Defendant Aeissio Schrage had first "deployed his Taser", striking Gilbertson with the debilitating electric charge from that device, and then Schrage fired his handgun, striking Gilbertson multiple times.

22. Lucas Paul Gilbertson, still alive after having been tazed and shot multiple times by Defendant Aeisso Schrage, was transported by ambulance to Altru Hospital in Grand Forks, where he died while in surgery.

23. Post mortem law enforcement pathology examination documented

the fact that Lucas Paul Gilbertson's death was caused by his having sustained multiple gunshot wounds.

24. Lucas Paul Gilbertson was entitled to be free from the unreasonable force which defendant Aeisso Schrage delivered upon him on January 9, 2024 – force which was manifestly disproportionate to the situation and which caused Gilbertson deadly harm.

25. As a direct and proximate result of the actions of defendant Aeisso Schrage's actions, decedent Lucas Paul Gilbertson suffered fatal physical injuries from multiple gunshot wounds in his death at the age of 42.

26. As a further direct and proximate result of the acts of Defendant Aeisso Schrage, Lucas Paul Gilbertson was permanently deprived of the enjoyment of life's activities.

27. As a further direct and proximate result of the acts of Defendant Aeisso Schrage, Lucas Paul Gilbertson experienced physical pain, mental pain, emotional distress, suffering, and fear.

28. As a further direct and proximate result of the acts of Defendant Aeisso Schrage, Rodney Paul Romuld was permanently deprived of the

enjoyment and companionship of his adult son, Lucas Paul Gilbertson.

29. As a further direct and proximate result of the acts of Defendant Aeisso Schrage, Rodney Paul Romuld has experienced mental pain, emotional distress, and suffering.

### 42 U.S.C. §1983 – Fourth Amendment Violations

30. Plaintiffs incorporates and re-allege all preceding paragraphs as though fully pleaded herein.

31. The defendant violated decedent Lucas Paul Gilbertson's rights as secured by the Fourth Amendment to the United States Constitution and as applied to Defendant Aeisso Schrage by the Fourteenth Amendment to the United States Constitution under 42 U.S.C. §1983, to be free from unreasonable searches and seizures.

32. The conduct of Defendant Aeisso Schrage identified in this count and described in this complaint constituted unreasonable excessive deadly force unjustified by the attendant circumstances in violation of the Fourth Amendment of the United States Constitution and clearly established law Fourth Amendment decisional law.

33. By acting as alleged herein, Defendant Aeisso Schrage deprived

Plaintiff Rodney Paul Romuld of his liberty interest in the companionship of his adult child decedent Lucas Paul Gilbertson, causing the plaintiff to have a cause of action under the Fourth Amendment because Defendant Aeisso Schrage killed the decedent without legal justification.

34. Defendant Aeisso Schrage's actions were grossly disproportionate to the need for action under the circumstances.

35. Defendant Aeisso Schrage used his authority to place Lucas Paul Gilbertson in a dangerous position that was foreseeable.

36. Given the actual attendant circumstances at the scene of the events of January 9, 2024, Defendant Aeisso Schrage had ample time to proceed in a deliberate fashion with careful consideration of the options, alternatives, the threat to safety, and severity of the alleged misconduct yet SCHARGE acted in willful disregard for the safety of Lucas Paul Gilbertson.

37. Defendant Aeisso Schrage was reckless and deliberately indifferent to the health and safety of Lucas Paul Gilbertson, to the

degree that it shocks the conscience.

38. The use of force by Defendant Aeisso Schrage was inspired by malice or by unwise, excessive zeal, amounting to an abuse of official power that shocks the conscience.

39. The death of Lucas Paul Gilbertson was foreseeable and direct, to Defendant Aeisso Schrage.

### 42 U.S.C. §1983 – Substantive Due Process

40. Plaintiffs incorporates and re-allege all preceding paragraphs as though fully pleaded herein.

41. By acting as alleged herein, Defendant Aeisso Schrage shot decedent Lucas Paul Gilbertson with the purpose to cause harm unrelated to the legitimate object of arrest.

42. The conduct of Defendant Aeisso Schrage constituted a violation of Lucas Paul Gilbertson's rights to due process of law as guaranteed by the Fourteenth Amendment to the Constitution of the United States. Said rights are enforceable pursuant to 42 U.S.C. §1983.

### 42 U.S.C. §1983 – The Eighth Amendment

43. Plaintiffs incorporates and re-allege all preceding paragraphs as

though fully pleaded herein.

44. The unprovoked and violent action by Defendant Aeisso Schrage constituted the blatant and malicious use of excessive force, consisting of the unnecessary and wanton infliction of pain and death.

45. The actions of Defendant Aeisso Schrage in pursuing Lucas Paul Gilbertson, including SCHRAGE as seen in the available law enforcement body and dash cams recordings of the incident suggest that SCHRAGE either received "Killology" or "warrior style" training and/or personally subscribed to the "warrior mindset", pursuant to which law enforcement officers consider every person and every situation as a potential deadly threat, where such officers are less hesitant to kill a suspect.

46. It is clear that the actions of Defendant Aeisso Schrage in killing Lucas Paul Gilbertson, as described above, too were representative of a state of mind where Lucas Paul Gilbertson was reduced in SCHRAGE's mind from a human being to a criminal who did not deserve any consideration as a human being.

47. The actions of Defendant Aeisso Schrage also were performed maliciously for the purpose of causing fear and intimidation to the occupants of the house.

48. The actions of Defendant Aeisso Schrage as alleged herein and the criminal process to punish Lucas Paul Gilbertson was a violation of his rights under the Eighth Amendment.

49. The violent action by Defendant Aeisso Schrage reflected a deprivation of and blatant deliberate indifference to decedent Lucas Paul Gilbertson and his right to be free from cruel and unusual punishment.

50. The acts of Defendant Aeisso Schrage subjected Lucas Paul Gilbertson to a great risk of bodily harm and injury by unjustly and unnecessarily exposing him to deadly force, where Gilbertson posed no threat to SCHRAGE, thus violating Gilbertson's right to be free from cruel and unusual punishment at the hands of Defendant Aeisso Schrage.

51. The conduct of Defendant Aeisso Schrage constituted a violation of the Plaintiff s rights as guaranteed by the Eighth Amendment to be

free from cruel and unusual punishment.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully requests the following relief:

A. A money judgment against Defendant Aeisso Schrage.
B. Just, reasonable, and fair actual, compensatory and punitive monetary damages from Defendant Aeisso Schrage.
C. Attorney's fees pursuant to Title 42 U.S.C. § 1988.
D. All costs and disbursements associated with bringing this lawsuit.
E. Post Judgment Interest.
F. Such legal and equitable relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

The Plaintiff hereby demands a trial by jury for all issues in this case

Dated this 9th day of February, 2024.

**JOHNSTON LAW OFFICE**
*/s/ DeWayne Johnston*
**DeWayne Johnston (MN#386444)**
dewayne@wedefendyou.net
221 South 4th Street
Grand Forks, ND 58201
T: (701) 775-0082
F: (701) 775-2230
**COUNSEL FOR DEFENDANT RODNEY PAUL ROMULD and the ESTATE of LUCAS PAUL GILBERTSON**